UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| HEMANT MEHTA, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>CADBURY SCHWEPPES SBS, INC., SNAPPLE BEVERAGE CORPORATION, SNAPPLE DISTRIBUTORS, INC., and JOHN DOEs 1-50 (representing one or more persons or entities involved in the manufacture, sale, and/or distribution of the products identified herein but whose identity is currently unknown),<br><br>    Defendants. | Civil Action No.: 07 CIV 6262 (LMM)<br><br><br>**ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS**

Seth T. Taube (ST 6088)
**Baker Botts L.L.P.**
30 Rockefeller Plaza
New York, New York  10112
Tel: (212) 408-2500
Fax: (212) 408-2501

Van H. Beckwith (to be admitted *pro hac vice*)
Allyson N. Ho (to be admitted *pro hac vice*)
**Baker Botts L.L.P.**
2001 Ross Avenue
Dallas, Texas  75210
Tel: (214) 953-6500
Fax: (214) 953-6503
*Attorneys for Defendants*

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................................................................. ii

I.  INTRODUCTION ................................................................................1

II.  STATEMENT OF FACTS ...................................................................2

    A.  Plaintiff's Putative Class Action ...............................................2

    B.  The Comprehensive Federal Regulatory Scheme for Labeling Food and Beverages ...........................................................................3

III.  ARGUMENTS AND AUTHORITIES.................................................5

    A.  Legal Standard Governing Motion to Dismiss ..........................5

    B.  Federal Law Preempts Plaintiff's Claims. ................................7

        1.  Plaintiff's Claims Are Expressly Preempted by the FFDCA......8

        2.  Plaintiff's Claims Are Impliedly Preempted Because Congress Has Fully Occupied the Field....................9

        3.  Plaintiff's Claims Are Obstacles to Important Federal Objectives and Therefore Impliedly Preempted. .................11

    C.  Plaintiff's Claims Should be Dismissed under the Primary Jurisdiction Doctrine.................................................................13

        1.  The Primary Jurisdiction Factors Weigh in Favor of Dismissing Plaintiff's Claims. .................................15

        2.  Courts Regularly Apply the Primary Jurisdiction Doctrine to Dismiss Similar Claims. ......................18

    D.  Plaintiff's Consumer Fraud Claim Fails for Multiple Additional Reasons. ...............................................................................21

        1.  Plaintiff Has Not and Cannot Allege That Snapple Committed a Deceptive Act or Practice.........................22

        2.  Plaintiff Has Not and Cannot Allege Any Actual Damages.....................27

        3.  Plaintiff Has Not and Cannot Allege Causality. .......................29

    E.  The Complaint Fails to State a Claim for Unjust Enrichment. ..............................30

    F.  The Complaint Fails to State a Claim For Breach of Express or Implied Warranty. ...............................................................31

IV.  CONCLUSION....................................................................................34

# TABLE OF AUTHORITIES

**PAGE**

*All-Tech Telecom v. Amway Corp.*,
    174 F.3d 862 (7th Cir. 1999) .........................................................................26

*Animal Legal Defense Fund Boston, Inc. v. Provimi Veal Corp.*,
    626 F. Supp. 278 (D. Mass. 1986) ..................................................................12

*Bell Atlantic Corporation v. Twombly*,
    550 U.S. __, 127 S. Ct. 1955 (2007) ......................................................6, 29, 30

*Bellevue South Assocs. v. HRH Constr. Corp.*,
    78 N.Y.2d 282 (N.Y. 1991) ............................................................................33

*Bernhardt v. Pfizer*,
    Nos. 00 Civ. 4042 LMM, 00 Civ. 4379 LMM, 2000 WL 1738645
    (S.D.N.Y. Nov. 22, 2000) .........................................................................14, 20

*Beth Israel Med. Ctr. v. Horizon Blue Cross and Blue Shield of New Jersey, Inc.*,
    448 F.3d 573 (2d Cir. 2006)............................................................................30

*Buckman v. Plaintiffs' Legal Comm.*,
    531 U.S. 341 (2001).....................................................................................9, 11

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002)..............................................................................7

*Chevy's Int'l, Inc. v. Sal De Enterprises, Inc.*,
    697 F. Supp. 110 (E.D.N.Y. 1988) ..................................................................26

*Cipollone v. Liggett Group, Inc.*,
    505 U.S. 504 (1992)......................................................................................5, 7

*Clean Air Markets Group v. Pataki*,
    338 F.3d 82 (2d Cir. 2002)..............................................................................11

*Crigger v. Fahnestock and Co., Inc.*,
    No. 01 Civ. 07819 (JFK), 2003 WL 22170607 (S.D.N.Y. Sept. 18, 2003).......30

*Cytyc Corp. v. Neuromedical Systems, Inc.*,
    12 F. Supp. 2d 296 (S.D.N.Y. 1998)...............................................................26

*DeRiso v. Synergy USA*,
    16 A.D.3d 152 (1st Dep't 2004).......................................................................28

*Donahue v. Ferolito, Vultaggio & Sons*,
    13 A.D. 3d 77, 78-79 (1st Dep't 2004)..........................................................24, 25, 27, 33

*EEOC v. Staten Island  Sav. Bank*,
    207 F.3d 144 (2d Cir. 2000).....................................................................................5

*Ellis v. Tribune Television Co.*,
    443 F.3d 71 (2d Cir. 2006)..................................................................................14, 18

*English v. General Electric Co.*,
    496 U.S. 72 (1990).................................................................................................11

*Evans v. Taco Bell Corp.*,
    No. 04-CV-103, 2005 WL 2333841 (D.N.H. Sept. 23, 2005)...........................................26

*Far East Conference v. United States*,
    342 U.S. 570 (1952)...............................................................................................15

*Ferracane v. United States*,
    No. 02-CV-1037 (SLT), 2007 WL 316570 (E.D.N.Y. Jan. 30, 2007) .............................33

*Fidelity Fed. Sav. & Loan Assn. v. de la Cuesta*,
    458 U.S. 141 (1982)................................................................................................9

*Frank v. DaimlerChrysler Corp.*,
    292 A.D.2d 118 (1st Dep't 2002) ............................................................................27

*Freightliner Corp. v. Myrick*,
    514 U.S. 280 (1995)...............................................................................................11

*Gaidon v. Guardian Life Ins. Co. of Am.*,
    725 N.E.2d 598 (N.Y. 1999)...................................................................................22

*Gale v. Int'l Bus. Mach. Corp.*,
    9 A.D.3d 446, 447 (2d Dep't 2004)..........................................................................29

*Geier v. American Honda Motor Co., Inc.*,
    529 U.S. 861 (2000)...........................................................................................11, 12

*Goldberg v. Enterprise Rent-A-Car Co.*,
    14 A.D.3d 417, 417-418 (1st Dep't 2005)..................................................................27

*Golden Hill Paugussett Tribe v. Weicker*,
    39 F.3d 51 (2d Cir. 1994) ...................................................................................13, 15

*Heller v. Coca-Cola Co.*,
    230 A.D.2d 768 (N.Y. App. Div. 2d Dep't 1996) ............................................................20

*Horowitz v. Sears, Roebuck and Co., Inc.*,
    137 A.D.2d. 492 (2d Dep't 1988) ....................................................................................32

*Hoyte v. Yum! Brands*,
    489 F. Supp. 2d 24 (D.D.C. 2007) ..................................................................................26

*Hubbard v. General Motors Corp.*,
    No. 95 Civ. 4362, 1996 WL 274018 (S.D.N.Y. May 22, 1996) ................................32, 33

*Human Tissue Prods. Liability Litigation*,
    488 F. Supp. 430 (D.N.J. 2007) ......................................................................................19

*In re Canon Cameras Litig.*,
    237 F.R.D. 357 (S.D.N.Y. 2006) .....................................................................................31

*In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*,
    175 F. Supp. 2d 593 (S.D.N.Y. 2001) .............................................................................21

*In re Motel 6 Sec. Litig*,
    No. 93 Civ. 2183 (JFK), 93 Civ. 2866 1997 WL 154011
    (S.D.N.Y. Apr. 2, 1997) ...................................................................................................30

*Independent Order of Foresters v. Donaldson, Lufkin & Jenrette Inc.*,
    919 F. Supp. 149 (S.D.N.Y. 1996) ..................................................................................26

*Inter Impex S.A.E. v. Comtrade Corp.*,
    No. 00 Civ. 0133 (GBD), 2004 WL 2793213 ..................................................................32

*Johnson v. Nyack Hosp.*,
    964 F.2d 116 (2d Cir. 1992) .............................................................................................13

*Jones v. Rath Packing Co.*,
    430 U.S. 519 (1977) ...........................................................................................................7

*Karlin v. IVF Am., Inc.*,
    93 N.Y.2d, 282 (1999) .....................................................................................................21

*Kolle v. Mainship Corp.*,
    No. 04CV711 (TCP) (MLO), 2006 WL 1085067 (E.D.N.Y. Apr. 20, 2006) ..................32

*Lacoff v. Buena Vista Publishing, Inc.*,
    183 Misc.2d 600, 705 N.Y.S.2d 183 (2000) ...................................................................26

*Landy v. Mitchell Petroleum Tech. Corp.*,
    734 F. Supp. 608 (S.D.N.Y. 1990)...................................................................................6

*Malone v. White Motor Corp.*,
    435 U.S. 497 (1978)........................................................................................................7

*McKart v. United States*,
    395 U.S. 185 (1969)......................................................................................................15

*Mintz v. American Tax Relief, LLC*,
    837 N.Y.S. 841 (N.Y. Sup. Ct. 2001) ..........................................................................22

*Moses v. Citicorp Mortg. Inc.*,
    982 F. Supp. 897 (E.D.N.Y. 1997) ..............................................................................22

*Nader v. Allegheny Airlines, Inc.*,
    426 U.S. 290 (1976)......................................................................................................14

*Nat'l Commc'ns Ass'n, Inc. v. AT & T Co.*,
    46 F.3d 220 (2d Cir. 1995)...........................................................................................15

*Negrin v. Norwest Mortgage, Inc.*,
    263 A.D.2d 39, 700 N.Y.S.2d 184 (2d Dep't 1999)......................................................25

*Pani v. Empire Blue Cross Blue Shield*,
    152 F.3d 67 (2d Cir. 1998)............................................................................................6

*Pennsylvania Employee Ben. Trust Fund v. Zeneca Inc.*,
    No. 05-5340, __ F.3d __, 2007 WL 2376312 (3d Cir. Aug. 17, 2007) ..............................9

*People v. Tri-Union Seafoods*,
    No. CGC-01-402975, C-04-432394, 2006 WL 1544384
    (Cal. Sup. Ct. May 11, 2006) ......................................................................................12

*Pharm. Research & Mfrs. of Am. v. Walsh*,
    538 U.S. 644 (2003)......................................................................................................14

*Pray v. Oughtred & Harrison (Shipping) Ltd.*,
    No. 98 CIV. 0599 JGK, 1999 WL 173591 (S.D.N.Y. Mar. 26, 1999) ............................22

*Redtail Leasing, Inc. v. Bellezza*,
    No. 95 Civ. 5191 (JFK), 1997 WL 603496 (S.D.N.Y. Sept. 30, 1997)...........................30

*Rice v. Santa Fe Elevator Corp.*,
    331 U.S. 218 (1947)........................................................................................................9

*Roberti v. Schroder Inv. Mgmt. North Am., Inc.*,
    No. 04 Civ. 2404 (LTS) (THK), 2006 WL 647718
    (S.D.N.Y. Mar. 14, 2006) ......................................................................................6

*Sandoz Pharm. Corp. v. Richardson-Vicks, Inc.*,
    902 F.2d 222 (3d Cir. 1990).............................................................................18, 19

*Schimmenti v. Ply Gem Indus., Inc.*,
    156 A.D.2d 658 (2d Dep't 1989).........................................................................32

*Small v. Lorillard Tobacco Co. Inc.*
    94 N.Y.2d 43 (N.Y. 1999) ..................................................................................28

*Smith v. Chase Manhattan Bank, USA, N.A.*,
    293 A.D.2d 598 (2d Dep't 2002).........................................................................29

*Smith v. Local 819 I.B.T. Pension Plan*,
    291 F.3d 236 (2d. Cir. 2002)................................................................................6

*Stutman v. Chemical Bank*,
    95 N.Y.2d 24 (N.Y. 2000) ..................................................................................27

*Sun Micro Med. Technologies Corp. v. Passport Health Commc'n, Inc.*,
    No. 06 Civ. 2083 (RWS), 2006 WL 3500702 (S.D.N.Y. Dec. 4, 2006) ...........................6

*Talbott v. C.R. Bard, Inc.*,
    63 F.3d 25 (1st Cir. 1995)...................................................................................9

*United States v. an Article of Device Diapulse*,
    650 F.2d 908 (7th Cir. 1981) ..............................................................................21

*United States v. Western Pacific R.R. Co.*,
    352 U.S. 59 (1956)............................................................................................13

*Universal Acupuncture Pain Serv., P.C. v. State Farm Mut. Auto. Ins. Co.*,
    196 F. Supp. 2d 378 (S.D.N.Y. 2002)..................................................................30

*Watters v. Wachovia Bank, N.A.*,
    550 U.S. __, 127 S. Ct. 1559 (2007)......................................................................7

*Weaver v. Chrysler Corp.*,
    172 F.R.D. 96 (S.D.N.Y. 1997) ..........................................................................22

*Williams Pipe Line Co. v. Empire Gas Corp.*,
    76 F.3d 1491 (10th Cir. 1996) .......................................................................19, 23

*Williams v. Gerber Prods. Co.*,
439 F. Supp. 2d 1112 (S.D. Cal. 2006), *appeal docketed*, No. 06-55921
(9th Cir. June 30, 2006) ...............................................................................7, 22, 24, 33

## STATUTES

N.Y. U.C.C. § 2-313(1) ............................................................................................33

N.Y. U.C.C. § 2-314 ................................................................................................31

5 U.S.C. § 701 ..........................................................................................................5

21 U.S.C. § 331 ........................................................................................................10

21 U.S.C. § 332 .....................................................................................................5, 10

21 U.S.C. § 333 ........................................................................................................10

21 U.S.C. § 334 .....................................................................................................5, 10

21 U.S.C. § 336 .....................................................................................................5, 10

21 U.S.C. § 337 .................................................................................................5, 9, 10

21 U.S.C. § 343 ...........................................................................................3, 5, 8, 10, 20

21 U.S.C. § 378 ........................................................................................................10

21 U.S.C. § 393 .....................................................................................................10, 15

## REGULATIONS

21 C.F.R. § 7 ............................................................................................................5

21 C.F.R. § 10 ...............................................................................................5, 9, 15, 16

21 C.F.R. § 101 ..........................................................................................3, 4, 8 10, 17, 24

21 C.F.R. § 102 ...........................................................................................3, 4, 8, 10, 17

21 Fed. Reg. 3922 (Jan. 24, 2006) ............................................................................12

56 Fed. Reg. 60,421 (Nov. 27, 1991) ..........................................................................4

58 Fed. Reg. 2897 (Jan. 6, 1993) .......................................................................4, 8, 17

**MISCELLANEOUS**

FDA Docket No. 2004P-0009/CP 1 (Dec. 2005) ....................................................4, 16

FDA Docket No. 2006P-0094 (Feb. 2006) ................................................................16

Defendants Cadbury Schweppes SBS, Inc., Snapple Beverage Corporation, and Snapple Distributors, Inc. (collectively "Snapple") file(s) this Motion to Dismiss in response to Plaintiff's Class Action Complaint (the "Complaint") and for the same shows as follows:

## I.     INTRODUCTION

On July 6, 2007, Plaintiff filed this putative nation-wide class action against Snapple, complaining about the labels of certain Snapple tea and juice drinks and purporting to bring claims under New York's consumer-fraud laws.   The complaints range from conspicuous labeling of a blackberry juice drink to a rooibos red tea to Snapple's labeling of "All Natural" and "Made from the Best Stuff on Earth."   Nowhere does the Complaint identify the particular Snapple product(s) allegedly bought by Plaintiff, if any.   Nor does Plaintiff say where he allegedly purchased the Snapple beverage(s) at issue or even allege that it was in New York— although Plaintiff nonetheless invokes New York law to govern claims purportedly brought on behalf of consumers across the nation.   Significantly, every issue raised by Plaintiff is addressed by explicit information on the labels.   Each consumer can review this information in making his or her own choice about buying and drinking any Snapple beverage.

National uniformity in food and beverage labeling is an important regulatory and policy goal.   It provides manufacturers and consumers a consistent and meaningful way to make available and review information about foods and beverages.   The state law Plaintiff attempts to invoke was designed to deter improper or fraudulent trade practices within the State of New York—not to establish food and beverage labeling requirements for the Nation.   That is the responsibility of the U.S. Food and Drug Administration ("FDA"), which exercises its congressionally delegated authority to issue comprehensive, detailed regulations and policy guidance that Snapple follows.

Plaintiff's state-law "mislabeling" claims ignore this regulatory context, disregard Snapple's compliance with the panoply of rules, regulations, and policy guidance promulgated by the FDA, and attempt an end-run around the agency's authority to regulate, in its discretion and expertise, all aspects of food and beverages—including labels—within its statutory mandate. Plaintiff remains free to address any legitimate concerns (though there are none) to the FDA or petition the agency to issue regulations more in line with his own personal policy preferences (and choices in beverages he buys and drinks). But Plaintiff's ill-advised attempt to regulate through litigation must be rejected.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court should dismiss Plaintiff's Complaint for multiple reasons. First, federal law preempts Plaintiff's claims. Second, and alternatively, Plaintiff's claims should be dismissed under the primary jurisdiction doctrine. Third, the Complaint fails to state a consumer fraud claim for a variety of reasons, including that Plaintiff's allegations are contradicted by the very labels he claims are misleading. Fourth, Plaintiff's unjust enrichment claim is fatally flawed because he did not confer any "benefit" upon Snapple to his detriment. Finally, Plaintiff's warranty claims should be dismissed for multiple additional reasons, including Plaintiff's failure to plead that he purchased a specific Snapple product and that such product was non-merchantable. For all these reasons, the Complaint must be dismissed in its entirety.

## II.    STATEMENT OF FACTS

### A.    PLAINTIFF'S PUTATIVE CLASS ACTION

Plaintiff filed this putative nation-wide class action seeking treble damages of "not less than $100 million," disgorgement of profits, injunctive relief, declaratory relief, and attorneys' fees purportedly on behalf of "all persons similarly situated" who in the last six years purchased (i) a "Snapple or Cadbury Schweppes 'All Natural' beverage that contained [high fructose corn

syrup] or other unnatural ingredient," (ii) a "Snapple 'juice drink,'" and/or (iii) a "Snapple 'red tea' beverage." *Compl.* ¶¶ 9, 67. Citing a variety of FDA regulations (*id.* ¶¶ 21, 44), Plaintiff alleges that Snapple's "mislabeling" (*id.* ¶ 2) is actionable under the New York Consumer Protection Act, Article 22-A of the New York General Business Law, section 349 (*id.* ¶¶ 40-48) and asserts state-law claims for unjust enrichment, breach of the implied warranty of merchantability, and breach of express warranty. *Id.* ¶¶ 49-66.

To perhaps provide further clarity on his vague and sprawling class definition, Plaintiff complains about labeling as follows: (i) titling and graphically depicting Snapple's acai-blackberry flavored beverages with fruits that are not contained in the juice in the product; (ii) labeling Snapple "red tea" beverages as "tea" and describing them as "red tea"; and (iii) describing Snapple beverages as "Made from the Best Stuff on Earth" and "All Natural" when they contain the natural sweetener known as high fructose corn syrup. *Id.* ¶ 2.

### B.    THE COMPREHENSIVE FEDERAL REGULATORY SCHEME FOR LABELING FOOD AND BEVERAGES

The Federal Food, Drug, and Cosmetic Act (FFDCA), 21 U.S.C. § 301, *et seq.*, as amended by the Nutritional Labeling and Education Act (NLEA), 21 U.S.C. § 343, *et seq.*, vests the FDA with broad regulatory authority over food and beverage labeling. Pursuant to this authority, the FDA has promulgated extensive regulations governing all aspects of such labeling, including ingredients (21 C.F.R. §§ 101.4, 101.22 & 101.100), nutrition information (*id.* at § 101.9), nutrition content claims (*id.* at §§ 101.13, 101.54, 101.56, 101.60-62, 101.65 & 101.69), and health claims (*id.* at §§ 101.14, 101.70-83).

Labeling for beverages containing fruit juice (as bottled by Snapple) is governed by 21 C.F.R. §§ 102.33 and 101.30. These regulations establish a series of detailed rules including (i) the proper use of the term "juice" to describe a beverage containing less than 100 percent juice,

*id.* at § 102.33(a); (ii) the proper order of ingredients on a beverage containing a blend of juices, *id.* at § 102.33(b); (iii) the proper name of a beverage containing a blend of juices, *id.* at § 102.33(c); (iv) the proper labeling of a beverage in which the juice named on the label "is not the predominant juice," *id.* at § 102.33(d)(1-2); (v) the "pictorial representations" that may appear on beverage labels, *id.* at § 102.33(f); (vi) the type size that must be used on beverage labels in which one or more juice is made from concentrate, *id.* at § 102.33(g)(1); and (vii) the requirement that beverages purporting to contain juice must bear a prominent declaration of the percent juice in the product. *Id.* § 101.30(d).  In addition, the FDA has established a definition for "natural flavors" that specifies the type of processing that can be undergone by products labeled as "natural flavors." 21 C.F.R. § 101.22(a)(3).  The FDA has also established pervasive requirements governing the use of vignettes of fruit and other characterizing ingredients and has determined when the use of such graphics will trigger the use of terms such as "naturally flavored," "artificially flavored," and/or "with other natural flavors." *Id.* at § 101.22(i).

The FDA has a well-established policy on the use of "all natural" and "100 percent natural."  Under the policy, the FDA will not restrict the use of the term "natural" except for added color, synthetic substances, and flavors; the FDA views "natural" "as meaning that nothing artificial or synthetic (including all color additives regardless of source) has been included in, or has been added to, a food that would not normally be expected to be in the food." 58 Fed. Reg. 2302, 2407 (Jan. 6, 1993); 56 Fed. Reg. 60,421, 60,466 (Nov. 27, 1991).  The FDA's pronouncements on "natural" are binding on the agency, which cannot take regulatory action against a company that labels its products in conformance with them. *See* 21 C.F.R. §§ 10.85(d)(1),(e).  The FDA has consistently maintained its policy on the labeling of products as "all natural." *See*, *e.g.*, Ex. C, FDA Docket No. 2004P-0009/CP 1 (Dec. 2005) (FDA declining

to alter its position regarding the use of the term "natural," including a request to restrict the term to products containing unaltered (*i.e.*, minimally processed) food ingredients).

The FFDCA expressly prohibits any deviation from FDA labeling requirements by mandating that "no State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce . . . any requirement for the labeling of food [and beverages] of the type required by [various sections of the FFDCA] that is not identical to the requirement of [such] section[s]."  21 U.S.C. § 343-1(a)(1)-(a)(5).    "State requirement" means "any statute, standard, regulation, or other requirement that is issued by a State," 21 C.F.R. § 100.1(b)(5), and encompasses common-law duties.  *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992).

The FFDCA does not provide either an express or an implied private right of action to enforce violations of the statute or regulations promulgated thereunder.  21 U.S.C. § 337(a). Rather, "all such proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States."  *Id.*  The FDA is authorized to issue "suitable written notice or warning," request a voluntary recall of unlawful products, seek an order enjoining manufacturers from selling unlawful products, or an order seizing them.  21 U.S.C. §§ 332, 334, 336; 21 C.F.R. § 7.40.  Any individual can file a citizen petition requesting the FDA to issue a regulation, amend a current regulation, or take other appropriate action.  21 C.F.R. § 10.30(e).  After the FDA has made a final decision about what action, if any, to pursue, an individual aggrieved by that decision can seek judicial review pursuant to 5 U.S.C. § 701.

## III.    ARGUMENTS AND AUTHORITIES

### A.    LEGAL STANDARD GOVERNING MOTION TO DISMISS

In deciding a motion to dismiss, the factual allegations in the complaint "are presumed to be true, and all reasonable inferences are drawn in the plaintiff's favor."  *EEOC v. Staten Island*

*Sav. Bank*, 207 F.3d 144, 148 (2d Cir. 2000). The Court, however, does not have to accept "a strained interpretation of such allegations." *Landy v. Mitchell Petroleum Tech. Corp.*, 734 F. Supp. 608, 615 (S.D.N.Y. 1990). And "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to [defeat] a motion to dismiss." *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d. Cir. 2002) (internal quotation marks and citation omitted). "[M]ore than labels and conclusions" are required, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corporation v. Twombly*, 550 U.S. __, 127 S. Ct. 1955 (2007) (citations omitted). A complaint must contain "enough facts to state a claim to relief that is plausible on its face" in order to withstand a motion to dismiss. *Id.* Otherwise, the complaint must be dismissed. *Id.*

"It is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6), including case law and statutes." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998). This Court may therefore consider federal governmental documents (and statements made therein) concerning FDA regulations, which Plaintiff cites, all of which are implicated by and central to Plaintiff's claims. *See Roberti v. Schroder Inv. Mgmt. North Am., Inc.*, No. 04 Civ. 2404 (LTS) (THK), 2006 WL 647718, at *3 (S.D.N.Y. Mar. 14, 2006) (taking judicial notice of EEOC filings and noting that "a court may take judicial notice of administrative records . . . without converting [a motion to dismiss] to a motion for summary judgment"); *see also Sun Micro Med. Technologies Corp. v. Passport Health Commc'n, Inc.*, No. 06 Civ. 2083 (RWS), 2006 WL 3500702, at *10 (S.D.N.Y. Dec. 4,

2006) (proper for court to take judicial notice of records and reports of administrative bodies when ruling on motion to dismiss).[1]

In the interests of clarity and completeness, Snapple has attached copies of the labels at issue as Exhibit A. This Court may properly consider them because Plaintiff has pleaded words and phrases from the labels without attaching the entirety of the label for the Court's consideration. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (on motion to dismiss, court may consider documents that the plaintiff relied on while drafting the complaint); *Williams v. Gerber Prods. Co.*, 439 F. Supp. 2d 1112, 1115 (S.D. Cal. 2006) (considering labels attached to motion to dismiss), *appeal docketed*, No. 06-55921 (9th Cir. June 30, 2006).

### B.    FEDERAL LAW PREEMPTS PLAINTIFF'S CLAIMS.

The preemption doctrine arises from the constitutional rule that the laws of the United States are the supreme law of the land, "any Thing in the Constitution or Law of Any State to the Contrary notwithstanding." U.S. Const., art. VI, cl. 2; *Cippollone*, 505 U.S. at 516. "The purpose of Congress is the ultimate touchstone" of preemption analysis. *Malone v. White Motor Corp.*, 435 U.S. 497 (1978). Congressional intent may be "explicitly stated in the statute's language or implicitly contained in its structure and purpose." *Jones v. Rath Packing Co.,* 430 U.S. 519 (1977). As the Supreme Court recently reaffirmed, preemption prevents "the burdens and undue duplication state controls could produce" where Congress has determined that "confusion would necessarily result from control possessed and exercised by two independent authorities." *Watters v. Wachovia Bank, N.A.*, 550 U.S. __, 127 S. Ct. 1559, 1568 (2007). These principles compel the conclusion that Plaintiff's claims are preempted and should be dismissed.

---

[1]    For the Court's convenience, an Index of Regulations is attached as Exhibit B, which contains the governing labeling requirements that Snapple follows.

1.    Plaintiff's Claims Are Expressly Preempted by the FFDCA.

Section 403A of the FFDCA expressly preempts any state requirement—including one imposed by a tort suit—that is "not identical" to certain requirements imposed by federal labeling regulations.  21 U.S.C. § 343-1.  Of most relevance here is section 343-1(a)(2), which specifically preempts state requirements "not identical" to the ingredient labeling provisions of section 343(i)(2), and section 343-1(a)(3), which specifically preempts state requirements "not identical" to the common or usual name provisions of section 343(i)(1) and the artificial labeling provisions of section 343(k).  For example, the FDA has established a "common or usual" name regulation for juice beverages that specifies the name that must appear on such products.  21 C.F.R. § 102.33.

Plaintiff's claims, which regard the "characterizing" ingredients in Snapple products— *i.e.*, the primary, recognizable flavors such as acai and blackberry—are subject to the express preemption provisions of the FFDCA.  *See* 21 U.S.C. § 343-1(a)(2),(3).  The FDA has established definitions for artificial flavors and natural flavors, 21 C.F.R. §§ 101.22(a)(1),(3), detailed requirements for identifying the characterizing ingredient as part of the common or usual name of a food, and rules concerning the use of fruit and other vignettes on products containing only the natural or artificial flavors depicted by the vignette.  21 C.F.R. § 101.22(i). The FDA also has authorized the use of fruit vignettes on beverages provided the depicted fruit is present in the product "in the form of a juice or of a natural or artificial flavor of the depicted fruit or vegetable."  58 Fed. Reg. 2897, 2922 (Jan. 6, 1993).  Plaintiff's claims challenging the ingredient labeling, common or usual names, flavor labeling and the use of vignettes on food labels, therefore, are expressly preempted and must be rejected.  21 U.S.C. § 343-1(a)(2),(3).

Plaintiff does not plead or suggest that Snapple has labeled its product inconsistent with these regulations, nor could he because Snapple conforms its labels to FDA rules.  Moreover, the

FDA has express enforcement authority, *see* 21 U.S.C. § 337(a), and the FFDCA expressly precludes a private right of action, *see Buckman v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 348 (2001). Plaintiff's simple and appropriate remedy is thus to complain to the FDA as the law allows. *See* 21 C.F.R. § 10.30(e). As one court explained in a similar context, "[t]o avoid the possibility of disuniform treatment, Congress placed enforcement authority in the FDA. . . . Centrally situated and with the requisite expertise, the FDA is in the best position to determine whether the provisions of the [statute] have in fact been violated and to ensure that the law is applied in a uniform manner." *Talbott v. C.R. Bard, Inc.*, 63 F.3d 25, 29-30 (1st Cir. 1995). "Given the FDA's central enforcement role, the preemptive scope" of section 403A "becomes clear," and bars Plaintiff's attempt to impose requirements that are "not identical" to the FDA's "common" or "usual" name regulations. *See id.* at 30.

        2.        Plaintiff's Claims Are Impliedly Preempted Because Congress Has Fully Occupied the Field.

Even without explicit preemptive language, Congress can impliedly preempt state-law requirements when it so thoroughly occupies an area of the law "'as to make reasonable the inference that Congress left no room for the States to supplement it.'" *Fidelity Fed. Sav. & Loan Assn. v. de la Cuesta*, 458 U.S. 141, 153 (1982) (*quoting Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)). Here, the sheer enormity of the federal statutory and administrative framework is a powerful indicator of Congress's intent to fully occupy the labeling field—and thus impliedly preempt Plaintiff's common-law "mislabeling" claims. *See, e.g., Pennsylvania Employee Ben. Trust Fund v. Zeneca Inc.*, No. 05-5340, __ F.3d __, 2007 WL 2376312, at *10 (3d Cir. Aug. 17, 2007) (holding that consumer fraud claims involving prescription drug advertisements were impliedly preempted by the FFDCA because, among other reasons, the

"high level of specificity in federal law and regulations with respect to prescription drug advertising is irreconcilable with general state laws").

The FFDCA includes myriad provisions setting forth the requirements necessary for compliance, as well as the potential consequences of noncompliance, within the comprehensive federal regulatory scheme. *See*, *e.g.*, 21 U.S.C. § 343(a) (defining "misbranding"); 21 U.S.C. § 331(a) (prohibiting "misbranding"); 21 U.S.C. § 343-1 (providing for "National uniform labeling"); 21 U.S.C. § 333(a) (listing applicable penalties for "misbranding"); 21 U.S.C. § 334(a) (making misbranded food and beverages subject to seizure); 21 U.S.C. § 378 (providing for the referral of misbranded products to the Federal Trade Commission). To implement this framework and provide for uniform national enforcement, Congress delegated broad authority to the FDA to promulgate such rules and regulations as may be necessary to promote and protect public health. 21 U.S.C. § 393. Notably, Congress vested the FDA with authority to promulgate regulations to ensure that food and beverages are "properly labeled." 21 U.S.C. § 393(b)(2)(A). The FDA, in turn, has issued scores of regulations that pertain specifically to labeling, from general provisions concerning misbranding to specific labeling requirements. *See generally* 21 C.F.R. §§ 101.1-.108, 102.5-.57; *see also* pp. 3-5, *supra*.

In addition, Congress has vested the FDA with express authority to enforce the FFDCA, 21 U.S.C. § 337(a), and provided the FDA with a wide-ranging arsenal of weapons to combat violations—including authority to obtain an ex parte court order for the seizure of goods subject to the Act, *see* 21 U.S.C. § 334, authority to initiate proceedings in a federal district court to enjoin continuing violations of the FFDCA, *see* § 332, and authority to request that a U.S. Attorney bring criminal proceedings against violators, *see* § 333. Federal law has occupied the field and there is no room for Plaintiff's thinly veiled attempt to regulate by litigation.

3.    Plaintiff's Claims Are Obstacles to Important Federal Objectives and Therefore Impliedly Preempted.

State-law claims are also impliedly preempted when they "stand[ ] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *English v. General Electric Co.*, 496 U.S. 72, 79 (1990); *Clean Air Markets Group v. Pataki*, 338 F.3d 82, 89 (2d Cir. 2002) (state pollution law preempted because it "impermissibly interferes with the methods by which [federal law] was designed to reach [the] goal of decreasing SO2 emissions, and therefore it stands as an obstacle to the execution of federal objectives") (internal quotation marks and citation omitted)).  "Obstacle" preemption applies even though a statute contains an express preemption clause.  *Freightliner Corp. v. Myrick*, 514 U.S. 280, 288-289 (1995).

In *Geier v. American Honda Motor Co., Inc.*, 529 U.S. 861, 874-75 (2000), the Supreme Court affirmed that preemption does not "require a formal agency statement of pre-emptive intent as a prerequisite to concluding that a conflict exists"—*i.e.*, that preemption can (and must) be inferred from a comprehensive federal regulatory scheme.  The Supreme Court thus held that because federal standards concerning airbags "deliberately provided the manufacturer with a range of choices among different passive restraint devices," common-law claims seeking to "restrict that range of choices" were preempted "as an obstacle to the accomplishment and execution of important . . . [federal] objectives."  *Id.* at 881.  The logic of *Geier* compels the same conclusion here.  The FDA is charged with overseeing a complex statutory scheme that requires the agency to balance important and sometimes competing policy objectives—a balance that might easily be upset by allowing mislabeling claims to proceed under state tort law.  *See Buckman*, 531 U.S. at 348 (holding that tort claims based on misrepresentations made in the FDA drug-approval process would "disrupt the balancing of federal statutory objectives").

In the similar context of drug labeling, the FDA has taken the position that given "the comprehensiveness of FDA regulation of drug safety, effectiveness, and labeling under the [FFDCA]," state-law tort suits are preempted because they "threaten FDA's statutorily prescribed role as the expert Federal agency responsible for evaluating and regulating drugs." 21 Fed. Reg. 3922, 3933-36, 3967-69 (Jan. 24, 2006). That reasoning applies just as forcefully to the labeling requirements at issue here, where Plaintiff's request for injunctive, declaratory, and monetary relief based on alleged product "mislabeling" impermissibly intrudes upon the comprehensive and uniform regulatory scheme for food and beverage labeling established by Congress and implemented (and enforced) by the FDA. As in *Geier*, Plaintiff's claims, if accepted, would stand as an obstacle to the federal objectives of consistency and uniformity by imposing new requirements and state-law standards.

For example, in *Animal Legal Defense Fund Boston, Inc. v. Provimi Veal Corp.*, 626 F. Supp. 278, 284 (D. Mass. 1986), the plaintiff ("ALDF") sued a Wisconsin veal producer (Provimi) alleging that Provimi "ought to tell consumers that its veal might be unhealthful because it comes from calves that are fed antibiotics" and that "not telling [consumers] is unfair and deceptive." The district court held that ALDF's consumer-fraud claims were preempted by a "comprehensive federal scheme regulating the labeling, packaging and marketing of meat" that made clear "Congress' intent to occupy the field . . . and to direct the State to leave all regulatory activity in that area to the federal government . . . ." *Id.* at 284. ALDF's lawsuit was "an inappropriate remedy" and dismissal was required. *Id.* at 281. The decision in *People v. Tri-Union Seafoods*, No. CGC-01-402975, CGC-04-432394, 2006 WL 1544384, at *2 (Cal. Sup. Ct. May 11, 2006), which held state requirements regarding canned tuna labels preempted, is to the same effect.

Here, Congress has assigned responsibility for making judgments (and enforcing them) about labeling to the regulatory expertise of the FDA, not to the vagaries of the tort system. Given (1) the FFDCA's express preemption provisions, (2) the comprehensiveness of the federal regulatory framework and the FDA's express enforcement authority, and (3) Congress's important objectives of national uniformity and consistency in regulating food and beverage labeling, Plaintiff's state-law mislabeling claims are preempted and must be dismissed.

C.    **PLAINTIFF'S CLAIMS SHOULD BE DISMISSED UNDER THE PRIMARY JURISDICTION DOCTRINE.**

Even if the Court thought there might be some room at the margins of the FDA's comprehensive regulatory regime for judicial action, it nevertheless should dismiss Plaintiff's claims on the ground of primary jurisdiction because they involve "resolution of issues which, under a regulatory scheme, have been placed within the special competence" of the FDA.  *See United States v. Western Pacific R.R. Co.*, 352 U.S. 59, 63-64 (1956) (noting that the "special competence" or "expertise" an agency brings to bear is not merely technical but extends to the policy judgments needed to implement an agency's mandate); *Golden Hill Paugussett Tribe v. Weicker*, 39 F.3d 51, 59 (2d Cir. 1994) (same).  "Primary jurisdiction is a judge-made doctrine intended to promote proper relationships between the courts and administrative agencies." *Johnson v. Nyack Hosp.*, 964 F.2d 116, 122 (2d Cir. 1992). The doctrine serves two principal interests: "consistency and uniformity in the regulation of an area which Congress has entrusted to a federal agency; and the resolution of technical questions of facts through the agency's specialized expertise, prior to judicial consideration of the legal claims." *Id.*  The Second Circuit has also cited judicial economy as an interest that the primary jurisdiction doctrine can serve. *Id.* at 123.

In this Circuit, the primary jurisdiction analysis generally focuses on four factors:  "(1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) whether the question at issue is particularly within the agency's discretion; (3) whether there exists a substantial danger of inconsistent rulings; and (4) whether a prior application to the agency has been made."[2]  *Ellis v. Tribune Television Co.*, 443 F.3d 71, 82-83 (2d Cir. 2006) (holding that district court should have dismissed claim pursuant to primary jurisdiction doctrine where issues involved "technical or policy considerations within the [Federal Communications Commission's] field of expertise").  Those factors weigh in favor of recognizing the FDA's primary jurisdiction in this matter.  In addition, the advantages of applying the doctrine outweigh any potential costs and delays that may result from doing so.  *See id.* at 90 (possibility of additional agency delay does not counsel against primary jurisdiction where case involves "highly complicated factual and policy disputes that the [agency] is uniquely well-situated to address").

It is difficult to imagine claims that more obviously should be resolved by the FDA, and not by litigation, than Plaintiff's.  Dismissal of Plaintiff's claims on primary jurisdiction grounds would further important public policy goals by promoting "consistency and uniformity" of decision, *see Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 303-304 (1976), and by "produc[ing] better informed and uniform legal rulings by allowing courts to take advantage of an agency's specialized knowledge, expertise, and central position within the regulatory regime." *See Pharm. Research & Mfrs. of Am. v. Walsh*, 538 U.S. 644, 673 (2003) (Breyer, J., concurring)

---

[2]    This Court has made clear that a party's "failure to make a prior application to the FDA" is "not dispositive" and does not preclude application of the primary jurisdiction doctrine.  *See Bernhardt v. Pfizer*, Nos. 00 Civ. 4042 LMM, 00 Civ. 4379 LMM, 2000 WL 1738645, at *3 (S.D.N.Y.  Nov. 22, 2000).

(*citing W. Pac. R.R. Co.*, 352 U.S. at 63-65); *see also McKart v. United States*, 395 U.S. 185, 194 (1969) (administrative agencies like FDA enjoy "primary jurisdiction" to exercise their "discretion" and apply their "expertise").

      1.    The Primary Jurisdiction Factors Weigh in Favor of Dismissing Plaintiff's Claims.

The Supreme Court has instructed that in "cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over." *Far East Conference v. United States*, 342 U.S. 570, 574-75 (1952). Here, Congress has entrusted the FDA with broad authority to promulgate and enforce such rules and regulations pertaining to labeling as the agency deems necessary to protect consumers and their safety. *See* 21 U.S.C. § 393. The FDA thus has "primary jurisdiction to make the initial determination on issues within its statutory mandate." 21 C.F.R. § 10.25(b).

Plaintiff, however, attempts to bypass the FDA's regulatory authority and expertise by asking this Court, among other things, to declare that high fructose corn syrup "does not exist in nature and is not 'minimally processed'" (*Compl.* ¶ 34) and that "red tea" is not "actually tea" (*id.* ¶ 12); he seeks to enjoin Snapple from titling and graphically depicting fruit drinks with fruits that are not contained in the form of juice in the product (*id.*) and from describing products as "All Natural" so long as they contain high fructose corn syrup (*id.* ¶ 15). Plainly, Plaintiff's claims involve "technical or policy considerations" that fall squarely within the FDA's "field of expertise" (and discretion) in food and beverage labeling and should be resolved by the FDA in the first instance. *See Nat'l Commc'ns Ass'n, Inc. v. AT & T Co.*, 46 F.3d 220, 222 (2d Cir. 1995); *Golden Hill*, 39 F.3d at 59.

For example, the FDA has recently and repeatedly affirmed its position regarding the use of the term "natural" on food and beverage labels. The FDA will not restrict the use of the term

"natural" except for added color, synthetic substances, and flavors, and the agency views "natural" "as meaning that nothing artificial or synthetic (including all color additives regardless of source) has been included in, or has been added to, a food that would not normally be expected to be in the food." *See* pp. 4-5, *supra*. If Plaintiff does not agree with the FDA's position, this lawsuit is not the proper recourse. Instead, Plaintiff's appropriate remedy is to petition the FDA to issue a regulation, amend a current regulation, or take an enforcement or any other appropriate action. 21 C.F.R. § 10.30(e).

That is precisely the path followed by the Sugar Association in filing a citizen petition on this issue that is currently pending before the FDA. *See* Ex. D, FDA Docket No. 2006P-0094 (Feb. 2006). Tellingly, Plaintiff seeks injunctive and declaratory relief in this lawsuit that is virtually identical to the agency action requested by the Sugar Association in its petition. *Compare id.* (asking the FDA to adopt a "minimally processed" definition), with *Compl.* ¶¶ 12, 32, 34 (asking this Court to declare that high fructose corn syrup "does not occur in nature and is not minimally processed" and then to enjoin labeling to the contrary). Rather than seeking to regulate through litigation, the primary jurisdiction doctrine requires Plaintiff to avail himself of the regulatory framework established by Congress in petitioning the FDA for a regulation along the lines he prefers, so that the agency can appropriately bring its expertise and regulatory authority to bear on this complex issue and balance the many different interests and competing considerations at stake. This is precisely what the FDA has publicly declared as its role and obligation on this precise issue. *See* Ex. C, FDA Docket No. 2004P-0009/CP 1 (Dec. 2005) (FDA stressing that "there are many facets of this issue that the agency will have to carefully consider" before undertaking any change).

Similarly, Plaintiff complains about the depictions of acai berries and blackberries on the Snapple label when the juice drink contains pear juice and natural acai and blackberry flavors. *Compl.* ¶ 2. But Snapple's use of graphics is consistent with the FDA's longstanding position that graphics that depict characterizing ingredients such as blackberry and acai flavors are appropriate where, as here, the fruit or juice is not present in the food. *See, e.g.*, 21 C.F.R. § 101.22(i); 58 Fed. Reg. 2897, 2921-2 (Jan. 6, 1993) (expressly declining to limit depictions of fruit or fruit juices to those specifically found in a product). Indeed, the FDA has expressly approved vignettes on juice-beverage labels that contain only the natural or artificial flavor of the represented fruit. *Id.* at 2922. Plaintiff does not plead or suggest that the graphics depart from FDA rules and regulations, nor could he as Snapple's labeling conforms with them. *Compare* Ex. A with the applicable regulation, 21 C.F.R. § 101.22(i).

Plaintiff also complains that pear juice is only identified on the label in the ingredient listing, *see* Compl. ¶¶ 13-17, but again, the label conforms to FDA regulations in this respect as well. *See* 21 C.F.R. § 102.33 (no requirement that a label identify the specific juice in a juice drink that contains a single juice). Moreover, the FDA has specifically recognized that it is appropriate for juice beverages to bear generic common or usual names that do not identify any specific juice. *See Questions and Answers for guidance to facilitate the process of developing or revising labels for foods other than dietary supplements*, available at http://www.cfsan.fda.gov/~lrd/qa2.html#juice. Besides, Plaintiff's allegation that Snapple Acai Blackberry Juice Drink labels are false and misleading because the beverage contains only pear juice, which is "not even mentioned on the product label," *Compl.* ¶ 2, is internally inconsistent and demonstrably untrue. The Complaint itself asserts that the label "indicates that the only juice

contained in the product is pear juice," *id.*, listed clearly for each consumer in the product ingredients panel just as the FDA requires. *See* Ex. A.

In sum, the primary jurisdiction factors point in favor of dismissing Plaintiff's claims, which (i) involve technical and policy considerations within the FDA's particular field of expertise, (ii) fall squarely within the FDA's discretion, (iii) pose a substantial danger of inconsistent rulings, and (iv) involve issues already pending before the FDA. In addition, because this case involves "highly complicated factual and policy disputes that the [FDA] is uniquely well-situated to address," the advantages of applying the doctrine outweigh any potential costs and delays that may result from doing so. *See Ellis*, 443 F.3d at 90; *see also Sandoz*, 902 F.2d at 231 n.10 (fact that plaintiff "has been unable to get a quick response from the FDA" does not warrant judicial intervention in the matter).

2.    Courts Regularly Apply the Primary Jurisdiction Doctrine to Dismiss Similar Claims.

A leading case on the FDA's primary jurisdiction over labeling claims confirms that referral to the FDA would be particularly appropriate here. *See Sandoz Pharm. Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 232 (3d Cir. 1990). The issue in *Sandoz* involved whether an ingredient in cough syrup should be labeled as an "active" or "inactive" ingredient as those terms were defined in FDA regulations. *Id.* at 230-31. The plaintiff brought an action under the Lanham Act, alleging that Vicks was making false and deceptive statements on cough syrup labels, and sought damages and an injunction. *Id.* at 223. Vicks argued that the plaintiff's Lanham Act claim was really just an FFDCA misbranding claim in disguise, and that while plaintiffs' allegations might create a cause of action for the FDA, they did not give rise to a private cause of action under the Lanham Act. *Id.* at 230.

The Third Circuit agreed with Vicks, noting that accepting the plaintiff's contrary position "would require us to usurp administrative agencies' responsibility for interpreting and enforcing potentially ambiguous regulations." *Id.* The court noted that the plaintiff was "free to petition the agency to investigate these alleged labeling violations," and made clear that merely because the plaintiff "has been unable to get a quick response from the FDA," that "does not create a claim for [plaintiff] under the Lanham Act." *Id.* at 231 n.10. Under *Sandoz*, that the FDA has not taken action to Plaintiff's liking is no reason for a court to supplant the FDA from its proper role. To the contrary, deferring to the FDA would serve the important goal of applying the agency's expertise and policy judgments to the issues presented while conserving judicial resources. *See, e.g., Williams Pipe Line Co. v. Empire Gas Corp.*, 76 F.3d 1491, 1496 (10th Cir. 1996).

The recent decision in *Human Tissue Prods. Liability Litigation*, 488 F. Supp. 430 (D.N.J. 2007), is to the same effect. There, plaintiffs sought an order requiring defendants to give notice to "unnamed class members of the need to have a blood test" in light of "potential dangers arising from their receipt of unscreened human tissue." *Id.* at 432. The district court declined plaintiffs' request, noting that FDA regulations "set forth specific recall procedures" and "require the FDA to evaluate the precise issue raised by Plaintiffs' motion. . . ." *Id.* at 432-33. "As these regulations show," the court concluded, "Congress clearly vested the FDA with the regulatory authority to assess and manage the communications regarding product recalls." *Id.* at 433. Because "Plaintiffs are essentially asking the [c]ourt to perform tasks traditionally relegated to the FDA," the court denied the motion and directed plaintiffs, "should they wish, to file a 'citizens' petition' with the FDA under 21 C.F.R. § 10.30." *Id.*

This Court reached the same conclusion in *Bernhardt v. Pfizer*, Nos. 00 Civ. 4042 LMM, 00 Civ. 4379 LMM, 2000 WL 1738645, at *1 (S.D.N.Y. Nov. 20, 2000), which involved a request for notice to users of a prescription drug (Cardura) and their physicians. There, plaintiffs sought an injunction ordering Pfizer to notify users of the drug Cardura of a clinical study finding it "less effective" than another drug. *See id.* This Court reasoned that the question of whether a National Health Institute's study suggesting Cardura was less effective than other drugs was not a question that could be decided without specialized expertise. *Id.* at *2. Plaintiffs were essentially asking this Court to determine the appropriate warning notice on a drug on the basis of scientific and medical principles not in its area of expertise. *Id.* Concluding that the issue of "whether the notice requested by plaintiffs is warranted is a decision that has been squarely placed within the FDA's expert discretion," this Court applied the primary jurisdiction doctrine, granted defendants' motion for judgment on the pleadings as to the claim for injunctive relief, and ordered plaintiffs' to direct their request to the FDA for its review. *Id.* at *3.

The court in *Heller v. Coca-Cola Co.*, 230 A.D.2d 768 (N.Y. App. Div. 2d Dep't 1996), held likewise. Heller brought consumer fraud and unjust enrichment claims against soft-drink manufacturers on behalf of consumers who purchased soft drinks containing a low-calorie sweetener (Aspartame) that Heller alleged had become spoiled, stale, or tasteless due to the sweetener's limited shelf life. *Id.* Citing the same statutory provisions implicated in this case— 21 U.S.C. § 331(a) (prohibiting the introduction into interstate commerce of any food that is misbranded) and 21 U.S.C. § 343(a) (defining food as misbranded if its labeling is false or misleading in any particular manner)—the court held that "the appropriateness of the labeling of beverages containing Aspartame and the use of Aspartame in aged soft drinks" should be referred to the FDA to "utilize the special expertise of the FDA . . . ." *Id.* at 769-70.

The Seventh Circuit's decision in *United States v. an Article of Device Diapulse*, 650 F.2d 908 (7th Cir. 1981), is similarly instructive. In *Diapulse*, the federal government brought an action to seize certain medical devices, arguing they were ineffective for the claims made in their labeling. *Id.* at 909. The court held that the legality of the labeling was for the FDA to determine and dismissed the case on primary jurisdiction grounds. *Id.* at 910.

This Court should reach the same conclusion in this case and dismiss Plaintiff's claims. This matter falls squarely within the FDA's authority and expertise, and referral is particularly appropriate given Plaintiff's requests for injunctive and declaratory relief regarding product labeling. The requested relief makes clear the crux of Plaintiff's Complaint is to impose regulatory requirements regarding beverage labeling, a function squarely within the FDA's purview and particular competence.

### D. PLAINTIFF'S CONSUMER FRAUD CLAIM FAILS FOR MULTIPLE ADDITIONAL REASONS.

Section 349 of New York General Business Law ("section 349") is a consumer protection statute intended to "provide needed authority" to address "false and deceptive business practices." *Karlin v. IVF Am., Inc.*, 93 N.Y.2d, 282 (1999). The statute was not intended to serve as a vehicle for testing novel legal theories or advancing Plaintiff's own public-policy goals. To state a section 349 claim, a private plaintiff must allege each of three elements: "that (1) defendants engaged in conduct that is deceptive or misleading in a material way; (2) the deceptive conduct was 'consumer-oriented'; and (3) plaintiff[] [has] been injured 'by reason of' defendants' conduct." *In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*, 175 F. Supp. 2d 593, 630 (S.D.N.Y. 2001). Plaintiff cannot satisfy this test for multiple reasons and his section 349 claim must therefore be dismissed.

1.    Plaintiff Has Not and Cannot Allege That Snapple Committed a Deceptive Act or Practice.

*Plaintiff's Allegations Are Contradicted By The Very Labels He Claims Are Misleading.*[3]    Only "a representation or omission likely to mislead a reasonable consumer acting reasonably under the circumstances" is actionable under section 349.  *Gaidon v. Guardian Life Ins. Co. of Am.*, 725 N.E.2d 598 (N.Y. 1999); *see also Pray v. Oughtred & Harrison (Shipping) Ltd.*, No. 98 CIV. 0599 JGK, 1999 WL 173591, at *10 (S.D.N.Y. Mar. 26, 1999) ("The first element requires a showing that a reasonable consumer would have been misled by the defendant's conduct.").  The standard for whether an act or practice is misleading is an objective one, requiring a showing that a reasonable consumer would have been misled by the defendant's product.  *See Mintz v. American Tax Relief, LLC,* 837 N.Y.S. 841 (N.Y. Sup. Ct. 2001).  Conclusory allegations are insufficient to state a claim under section 349.  *Moses v. Citicorp Mortg. Inc.*, 982 F. Supp. 897, 903 (E.D.N.Y. 1997).  Instead, a plaintiff must plead with specificity the allegedly deceptive acts or practices that form the basis of a claim under the Act.  *Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 100 (S.D.N.Y. 1997).  Plaintiff has not and cannot do so here because, among other reasons, the labels themselves refute his claims.

Reasonable consumers will read the entirety of a label if they are concerned about a product's ingredients.  For example, as discussed *supra*, at pp.17-18, Plaintiff contends the labels are deceptive because the beverages do not contain the fruit depicted on the label.  *Compl.* ¶ 14.  Setting aside that FDA regulations expressly endorse Snapple's approach, "the mere depiction of fruit . . . is not a specific affirmative representation that the product contains those fruits."  *Williams v. Gerber Prods. Co.*, 439 F. Supp. 2d 1112, 1116 (S.D. Cal. 2006) (rejecting claim that

---

[3]    For precisely the same reasons that Plaintiff's claims are barred by the doctrines of preemption and/or primary jurisdiction, *see* pp. 7-21, *supra*, they fail to state a section 349 or common-law claim based on "false labeling," "mislabeling," or "fraud."  Accordingly, we will not repeat those arguments here but merely incorporate them by reference.

graphics of oranges, peaches, strawberries, cherries, pineapple and other berries created confusion and misrepresented the contents of a product that contained only grape juice), *appeal docketed*, No. 06-55921 (9th Cir. June 30, 2006).

In *Williams*, the court dismissed on Rule 12(b)(6) grounds claims virtually identical to Plaintiff's here, holding that "no reasonable consumer upon review of the [label] as a whole would conclude" that the "Fruit Juice Snacks" at issue there "contain[ ] the juice from the actual and fruit-like substances displayed on the [label] *particularly where the ingredients are specifically identified*." *See id.* (emphasis added). Where, as here, "a consumer can readily and accurately determine the nutritional value and ingredients of a product," a consumer could not be "deceived by depictions of fruit and fruit-like substances on the primary packaging label." *Id.* Just as in *Williams*, the Snapple label provided all the information Plaintiff needed to "readily and accurately determine the nutritional value and ingredients of a product," and hence no reasonable consumer could be "deceived" into making an uninformed choice. *See id*; *see also* Acai-Blackberry Label (Ex. A). Indeed, the Snapple labels at issue explicitly state in the ingredient line that (i) the juice used is pear juice, and that (ii) the beverage is sweetened with high fructose corn syrup. *Id.* Thus, so too must Plaintiff's section 349 claim fail because he cannot show that a reasonable consumer would have been deceived by Snapple's labels.

Plaintiff's allegations concerning Snapple's red tea beverages are similarly infirm. As with each of Plaintiff's other allegations, the Snapple labels at issue explicitly state in the ingredient line that the tea used is rooibos red tea. Red Tea Labels (Ex. A). That information is also repeated elsewhere on the label. *Id.* Plaintiff attempts to rely on a website for an industry trade association—the Tea Association—to contend that because "[a]ll tea comes from the Camellia sinensis plant, a warm-weather evergreen," and red tea does not, it is "technically not a

tea." *See Compl.* ¶ 2 (citing http://www.teausa.org/general/501g.cfm).  But on even a simple inspection of the precise label Plaintiff complains about, Plaintiff's claim proves its own fatal defects and nothing in the trade association website can save it.  Namely, each consumer reading the Snapple label will learn that the label specifically describes red tea as "rooibos, a rare antioxidant-rich tea that only grows in the Western Cape region of South Africa," and the ingredient listing states in bold, all-capital letters that "OUR TEA STARTS WITH ROOIBOS GROWN IN THE CAPE TOWN REGION OF SOUTH AFRICA" and goes on to list, among other ingredients, "ROOIBOS (Red Tea)." *See Ex. A* (red-tea labels).  The Snapple label thus provides all the information a consumer needs to "readily and accurately determine the nutritional value and ingredients of [the] product," and hence no reasonable consumer could be "deceived" into making an uninformed choice.[4]  *See Gerber*, 439 F. Supp. 2d at 1116; *see also Donahue v. Ferolito, Vultaggio & Sons*, 13 A.D. 3d 77, 78-79 (1st Dep't 2004) (dismissing similar consumer-fraud claims alleging that labels of herbal iced teas were allegedly deceptive).

Moreover, even the trade association's own guidelines—tellingly cited only in part by Plaintiff—confirm that Plaintiff's claims are baseless.  According to the trade association relied on by Plaintiff, "tea" also includes herbal varieties such as chamomile.  *See* http://208.112.120.134/general/star/teatutorial/gourmetret9.cfm.  And the trade association for black and green teas, when referring to red tea as "*technically* not a tea," says this: "[W]hen using "the term 'Red Tea' to describe a product derived from the rooibos or Red Bush plant, the term should be qualified by stating that it contains rooibos Herbal Tea." *See* http://www.teausa.org/general/501g.cfm.  Just so, the Snapple label specifically describes red tea

---

[4]     So too with Plaintiff's claims regarding high fructose corn syrup, which likewise plainly appears on the label in the ingredient list, just as the FDA's regulations require.  *See Ex. A* (labels); 21 C.F.R. § 101.4(a).

as "*rooibos*, a rare antioxidant-rich tea that only grows in the Western Cape region of South Africa." *See* Red Tea Labels (Ex. A) (emphasis added).  The Snapple label is thus not only compliant with FDA regulations, which recognize that common or usual names may be established by "common usage" under 21 C.F.R. § 102.5(d), but also consistent even with the trade association's own guidelines.

Further, the ordinary meaning of the word "tea" is not strictly limited to beverages made from the Camellia sinensis plant, as the trade association's website makes clear.  *See* http://www.teausa.org/general/501g.cfm (explaining that "[*h*]*erbal teas* do not come from Camellia sinensis") (emphasis added).  Contrary to Plaintiff's assertions, it is only the "unqualified" use of the term "tea" that the trade association finds objectionable. *Id.* (emphasis added).  That is not a concern here, where Snapple's "Red Tea" product labels are compliant with FDA labeling requirements, consistent even with the trade association guidelines, and not misleading or deceptive as a matter of law by making full disclosure of the rooibos content.

Plaintiff's allegations are thus contradicted by the very labels he claims are misleading. With respect to each "category" of Plaintiff's allegations, Snapple's labels convey all the information Plaintiff or any other consumer needs to make an informed purchasing decision:  (i) that each beverage is sweetened by high fructose corn syrup; (ii) that each "red tea" beverage contains rooibos; and (iii) that each acai-blackberry beverage contains pear juice and natural flavors.   Plaintiff's section 349 claim therefore fails as a matter of law. *See Negrin v. Norwest Mortgage, Inc.*, 263 A.D.2d 39, 50, 700 N.Y.S.2d 184 (2d Dep't 1999) ("Consumer fraud claims may not be predicated upon fully disclosed facts.").

      *The Assertion that Snapple Drinks are "Made From the Best Stuff on Earth" is Non-Actionable Puffery.*  Section 349 specifically excludes puffery as a basis for a breach-of-

warranty action.  *See Independent Order of Foresters v. Donaldson, Lufkin & Jenrette Inc.*, 919 F. Supp. 149, 152 (S.D.N.Y. 1996) ("opinions, puffery, and other similar language [are] not actionable as a breach of warranty"); *Lacoff v. Buena Vista Publishing, Inc.*, 183 Misc.2d 600, 705 N.Y.S.2d 183, 191 (2000) (dismissing claims under section 349 because certain language "is not actionable, as it is simply puffery or opinion"); *Cytyc Corp. v. Neuromedical Systems, Inc.*, 12 F. Supp. 2d 296, 300 (S.D.N.Y. 1998) ("subjective claims of product quality" are "nonactionable" under section 349).  Nonetheless, Plaintiff contends that Snapple's slogan, "Made From the Best Stuff on Earth," is "misleading and/or inaccurate and/or deceptive" under section 349.  *See Compl.* ¶¶ 1, 2.  Plaintiff is wrong as a matter of law.

"Made From the Best Stuff on Earth" is a textbook example of "puffing" or "puffery" that does not come within the ambit of section 349.  *See Cytyc Corp. v. Neuromedical Sys. Inc.*, 12 F. Supp. 2d 296, 301 (S.D.N.Y. 1998) (statements that product was "the new gold standard" and preserved cells "the way nature made them" held to be opinion or puffery); *Chevy's Int'l, Inc. v. Sal De Enterprises, Inc.*, 697 F. Supp. 110, 112 (E.D.N.Y. 1988) (dismissing section 349 claims because the use of the term "Original" to describe a restaurant "even if factually incorrect, was standard industry puffing that does not rise to the level of consumer deception"); *Lacoff*, 183 Misc.2d at 610 (statements on cover of "how to" book that provided "secret recipe for success" for beating the stock market were mere puffery and not actionable under section 349).  It is particularly well established that puffery about a product being the "best" is not actionable.  *See*, *e.g.*, *All-Tech Telecom v. Amway Corp.*, 174 F.3d 862, 868 (7th Cir. 1999) (statement that product was "the best" mere puffery); *Hoyte v. Yum! Brands*, 489 F. Supp. 2d 24 (D.D.C. 2007) ("KFC's claims that its restaurants serve the 'best food' is a non-measurable, 'bald statement of superiority' that is non-actionable puffery."); *Evans v. Taco Bell Corp.*, No. 04-CV-103, 2005

WL 2333841, at *12 n.19 (D.N.H. Sept. 23, 2005) (statement that Taco Bell provided "the best food and dining service in the quick service restaurant business" was a "general claim[ ] to superiority, known as puffery" and did "not amount to [an] actionable representation[ ]").  Under these authorities, Snapple's slogan is plainly not an actionable statement of fact, but mere puffery.

2.    Plaintiff Has Not and Cannot Allege Any Actual Damages.

Even if Plaintiff could allege deceptive conduct by Snapple—which he cannot—his section 349 claims would fail on the second prong:  Under section 349, a plaintiff must plead specific facts showing that he suffered "actual injuries or damages."  *Stutman v. Chemical Bank*, 95 N.Y.2d 24, 29 (N.Y. 2000); *see also Frank v. DaimlerChrysler Corp.*, 292 A.D.2d 118, 121 (1st Dep't 2002); *Goldberg v. Enterprise Rent-A-Car Co.*, 14 A.D.3d 417, 417-418 (1st Dep't 2005) (finding that section 349 claims were properly dismissed for failure to allege any actual harm).

In a class action involving substantially similar allegations, *Donahue v. Ferolito, Vultaggio & Sons*, 13 A.D.3d 77 (1st Dep't 2004), the court affirmed the dismissal of a section 349 claim for failure to satisfy the "actual injury" prong.  The plaintiffs complained that allegedly deceptive labels on herbal iced teas and fruit punch drinks—promising that consumption of the beverages would improve memory, reduce stress and improve overall health—caused them to spend money, but receive no health benefits in return.  *Id.* at 78. However, the court found that because the plaintiffs never alleged that the cost of the beverages was inflated by the alleged misrepresentation or that their health was adversely affected by the beverages, they failed to demonstrate "actual injury," and instead tried to set up the deception as both the act and injury, which is impermissible under New York law.  *Id.*

It is well-established under New York law that a plaintiff bringing a section 349 claim cannot rely on the defendant's alleged deceptive conduct to satisfy both the "deceptive act or practice" element and the "actual injury" element. As the court in *Small v. Lorillard Tobacco Co. Inc.* explained, plaintiffs bringing claims under section 349 cannot "set[] forth deception as both act and injury." 94 N.Y.2d 43, 56 (N.Y. 1999). In that case, the plaintiffs argued that deceptive commercial practices on the part of cigarette manufacturers prevented them from making "free and informed choices as consumers," and if they had known the truth about nicotine, "they never would have purchased" the cigarettes. *Id.* The plaintiffs in *Small* argued that their inability to make an informed purchasing decision due to the alleged deception by the manufacturers satisfied "actual injury" element under the statute. The court rejected that argument, stating that the "[p]laintiffs' definition of injury is legally flawed." *Id.* Fatal to their 349 claim was the fact that the plaintiffs had failed to allege that the cost of cigarettes was affected by the alleged misrepresentation. *Id.* Moreover, the plaintiffs did not seek recovery for injury to their health as a result of addiction. *Id.* The relief sought by the plaintiffs was confined to monetary recoupment of the purchase price of the cigarettes. *Id.* As a result, the court held that the plaintiffs had failed to establish actual harm sufficient to allow recovery under section 349. *See also DeRiso v. Synergy USA*, 6 A.D.3d 152 (1st Dep't 2004) (dismissing section 349 claim for impermissibly conflating the "deceptive act" and "actual injury" requirements).

Here, Plaintiff does not claim to have actually purchased, by name, *even one* of the more than two dozen Snapple beverages referenced in the Complaint—much less all three of the beverages that are its focus, *i.e.*, acai blackberry, red tea, and high fructose corn-sweetened beverages. *A fortiori*, he has not and cannot allege any diminished value between the price he paid and the product he received. Like the plaintiffs in *Small* and *Donahue*, Plaintiff here has

presented the alleged deception, *i.e.*, the alleged mislabeling, as "both act and injury." Thus, Plaintiff's section 349 claim is fatally flawed and must be dismissed.

Furthermore, Plaintiff's bare allegations that he and the class "have been damaged and suffered ascertainable loss" (*Compl.* ¶ 51) amount to nothing more than a "formulaic recitation of the elements of [the] cause of action," and "will not do." *Twombly*, 127 S. Ct. at 1974. In *Smith v. Chase Manhattan Bank, USA, N.A.*, 293 A.D.2d 598, 599 (2d Dep't 2002), the court found that plaintiffs had not alleged and could not prove any "actual injury" as required under section 349. The court explained that mere conclusory allegations that the defendant's actions caused actual damages and injury in amounts to be determined were insufficient to meet the threshold under the statute. *Id.* Likewise here, Plaintiff's conclusory allegations do not come close to satisfying the actual injury or damage requirement and only underscore Plaintiff's inability to do so. Plaintiff has not and cannot meet the injury or damage requirement for the basic reason that he could only reasonably have intended to purchase a beverage, and that is precisely what he received. Plaintiff's section 349 claim must be dismissed for this reason alone.

> ### 3.    Plaintiff Has Not and Cannot Allege Causality.

Even if Plaintiff could show unlawful conduct *and* actual damages, which he cannot, his section 349 claim still must be dismissed because he cannot show any causal nexus between the two. *See Gale v. Int'l Bus. Mach. Corp.*, 9 A.D.3d 446, 447 (2d Dep't 2004) (affirming dismissal of section 349 claims for failure to show causation). Although section 349 does not require Plaintiff to prove reliance, the statute does require him, on behalf of the putative class, to prove a causal relationship between an alleged act of consumer fraud and damages sustained thereby. *See id.* Plaintiff has not, and cannot, do so here.

In *Gale*, the plaintiff cited allegedly misleading statements by IBM, but failed to state that he saw any of those statements before he purchased the product at issue. 9 A.D.3d at 447. The

court found that if the plaintiff had not seen any of those statements, the statements could not possibly have been the cause of his alleged injury. *Id.* That failure to show a connection between the alleged deceptive act and the injury was fatal to the plaintiff's section 349 claim. Here, Plaintiff does not even allege that he read the labels in question, much less that he relied upon them or that they otherwise "misled" him. In the absence of any facts suggesting a causal nexus, Plaintiff's section 349 claim must be dismissed. *See Twombly*, 127 S. Ct. at 1964.

<h3 style="text-align:center">E. THE COMPLAINT FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT.</h3>

Perhaps recognizing the weaknesses of his other theories of recovery, Plaintiff also asserts a claim of unjust enrichment. As an initial matter, unjust enrichment is an equitable remedy unavailable where, as here, a plaintiff has an adequate legal remedy in damages. *Crigger v. Fahnestock and Co., Inc.*, No. 01 Civ. 07819 (JFK), 2003 WL 22170607, at *12 (S.D.N.Y. Sept. 18, 2003). Moreover, Plaintiff cannot satisfy any requirement for unjust enrichment: (1) that the defendant was enriched; (2) that the enrichment was at plaintiff's expense; and (3) the circumstances are such that equity and good conscience require that the defendant make restitution. *See Beth Israel Med. Ctr. v. Horizon Blue Cross and Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 586 (2d Cir. 2006); *Universal Acupuncture Pain Serv., P.C. v. State Farm Mut. Auto. Ins. Co.*, 196 F. Supp. 2d 378, 387 (S.D.N.Y. 2002).

As an initial matter, a claim for unjust enrichment "requires some type of direct dealing or actual, substantive relationship with a defendant." *Redtail Leasing, Inc. v. Bellezza*, No. 95 Civ. 5191 (JFK), 1997 WL 603496, at *8 (S.D.N.Y. Sept. 30, 1997) (dismissing unjust enrichment claim for Plaintiff's failure to allege any direct dealings or substantive relationship with the defendant); *see also In re Motel 6 Sec. Litig*, No. 93 Civ. 2183 (JFK), 93 Civ. 2866 (JFK), 1997 WL 154011, at *7 (S.D.N.Y. Apr. 2, 1997) (same). Here, Plaintiff has failed to allege any "direct dealing" or "actual, substantive relationship" with Snapple that would satisfy

this requirement.    In addition, the Complaint fails to allege that Plaintiff conferred any benefit upon Snapple that resulted in an unjust detriment to him or any member of the putative class.  Indeed, Plaintiff fails to plead any facts suggesting that Snapple accepted or retained any benefits under circumstances that would make it inequitable to retain them.  No amount of re-pleading can cure this fatal flaw.  Snapple could not have been enriched at Plaintiff's expense because Plaintiff could only reasonably have intended to purchase a beverage, and that is precisely what he received.  Plaintiff's unjust enrichment claim thus fails for yet another reason.

F.    **THE COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF EXPRESS OR IMPLIED WARRANTY.**

Counts III and IV of the Complaint allege that Snapple breached express and implied warranties.  Neither claim can survive dismissal.  To state a claim for breach of the implied warranty of merchantability, Plaintiff must allege that he purchased a product that was not "fit for the ordinary purposes for which such goods are used."  *In re Canon Cameras Litig.*, 237 F.R.D. 357, 359 (S.D.N.Y. 2006) (citing N.Y. U.C.C. § 2-314).  Plaintiff cannot satisfy this standard.

As an initial matter, Plaintiff does not allege that he or any member of the putative class purchased any specific Snapple beverage, much less one that was otherwise unsuited for the ordinary uses for which beverages are sold.  Indeed, Plaintiff pleads no facts whatsoever indicating that the (unidentified) beverage he allegedly purchased fell short of the reasonable and ordinary expectations of consumers in any way.  Plaintiff does not allege that the beverage(s) he allegedly consumed was in any way unpalatable or that he suffered any immediate ill effects after he allegedly consumed the beverage.  The decision in *Donahue* is directly on point where the court in a consumer class action against manufacturers of bottled soft drinks affirmed the dismissal of an implied warranty claim because the "merchantable beverages caused no ill

effects and were fit for their intended purpose, namely liquid refreshment." 13 A.D.3d at 79; *see also Schimmenti v. Ply Gem Indus., Inc.*, 156 A.D.2d 658, 659 (2d Dep't 1989) (affirming dismissal of claim based on implied warranty of merchantability for failure to demonstrate that paneling "was defective or not fit for the purpose for which it was intended"); *Horowitz v. Sears, Roebuck and Co., Inc.*, 137 A.D.2d. 492 (2d Dep't 1988) (dismissing implied warranty of merchantability claim as "the merchant warrants only that the goods sold are fit for their ordinary purpose . . . [and] the appliances at issue were fit for their ordinary purposes of laundering clothing."). Similarly, here, Plaintiff cannot show that Snapple beverages were unfit for their ordinary purposes, and he therefore fails to state a claim for breach of implied warranty of merchantability.

Plaintiff's implied warranty claim fails for another reason: lack of privity. In non-personal injury actions, "under New York law, absent privity of contract, a purchaser cannot recover mere economic loss against a manufacturer under a theory of breach of implied warranty." *Hubbard v. General Motors Corp.*, No. 95 Civ. 4362, 1996 WL 274018, at *5 (S.D.N.Y. May 22, 1996) (citations and quotations omitted); *see also Inter Impex S.A.E. v. Comtrade Corp.*, No. 00 Civ. 0133 (GBD), 2004 WL 2793213, at *5 (S.D.N.Y. Dec. 6, 2004) (dismissing breach of implied warranty claims for failure to allege the existence of privity with defendant) (citations and quotations omitted); *Kolle v. Mainship Corp.*, No. 04CV711 (TCP) (MLO), 2006 WL 1085067, at *6 (E.D.N.Y. Apr. 20, 2006) (stating that "where only economic loss is alleged, implied warranties do not run to remote purchasers"). Again, Plaintiff does not—and cannot—allege privity here.

Furthermore, Plaintiff's failure to provide Snapple of notice of his claim for breach of the implied warranty of merchantability is fatal to his claim. Notice is a requirement under New

York law for a breach of warranty claim. *See Bellevue South Assocs. v. HRH Constr. Corp.*, 78 N.Y.2d 282, 298 (N.Y. 1991); *Hubbard*, 1996 WL 274018, at *4 (dismissing implied warranty claim for failure to allege notice). Plaintiff's Complaint lacks any allegation that he notified Snapple of any alleged breach of warranty. Such a failure requires dismissal of the claim.

Plaintiff's express warranty claim fares no better. Under New York's version of the Uniform Commercial Code, an "express warranty" is "(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise," and "(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." N.Y. U.C.C. § 2-313(1). Plaintiff has no cause of action under that statute, because he has failed to allege that any such "affirmation of facts," "promises," or "descriptions" on the product labels at issue were "part of the basis of the bargain." And even if Plaintiff had, he cannot show any breach because Plaintiff has not alleged—and cannot show—that Snapple made any affirmations of fact on the label to which its products did not conform. *See Donahue*, 13 A.D. 3d at 79 (affirming dismissal of express warranty claim because the labels at issue contained no affirmation of fact or promise that the beverages offered any health benefits); *Ferracane v. United States*, No. 02-CV-1037 (SLT), 2007 WL 316570, at *8 (E.D.N.Y. Jan. 30, 2007) ("Absent evidence of some affirmation of fact, promise, description, sample or model, there is no basis for alleging a breach of an express warranty."). The challenged statements are either truthful in context or non-actionable puffery. *See Williams*, 439 F. Supp. 2d at 1118 (dismissing similar breach of express warranty and breach of implied warranty claims). Either way, they are not actionable and Plaintiff's claim must be dismissed.

**IV.    CONCLUSION**

For the foregoing reasons, the Complaint should be dismissed in its entirety, with prejudice, or alternatively without prejudice pursuant to the primary jurisdiction doctrine.


Respectfully submitted,


**BAKER BOTTS L.L.P.**

Dated:  August 29, 2007                                    /s/ Seth T. Taube
                                                                      Seth T. Taube (ST 6088)
                                                                      30 Rockefeller Plaza
                                                                      New York, New York  10112
                                                                      Tel:    (212) 408-2500
                                                                      Fax:    (212) 408-2501

                                                                      Van H. Beckwith (to be admitted *pro hac vice*)
                                                                      Allyson N. Ho (to be admitted *pro hac vice*)
                                                                      Baker Botts, L.L.P.
                                                                      2001 Ross Avenue
                                                                      Dallas, Texas  75210
                                                                      Tel:    (214) 953-6500
                                                                      Fax:    (214) 953-6503

                                                                      *Attorneys for Defendants*